1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


```
* * * * * * * * * * * * * * * * *
                                *
UNITED STATES OF AMERICA        *
                                *  04-CR-51-01-JD
            v.                  *  October 14, 2004
                                *  2:00 p.m.
SUNDAY WILLIAMS                 *
                                *
* * * * * * * * * * * * * * * * *
```


TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE JOSEPH A. DiCLERICO JR.


Appearances:


For the Government:   Alfred Rubega, AUSA
                     U.S. Attorney's Office

For Probation:       Melissa Elworthy
                     U.S. Probation Office

For the Defendant:   Richard F. Monteith Jr., Esq.
                     14 Londonderry Road
                     Londonderry, NH  03053

Court Reporter:      Celeste A. Quimby
                     NH LCR No. 17
                     (quimbybj@metrocast.net)

1                     BEFORE THE COURT

2              THE CLERK:  The court has before it for

3     consideration this afternoon a change of plea in

4     Criminal Case 04-51-01-JD, United States of America

5     versus Sunday Williams.

6              Mr. Williams, if you'd please raise your right

7     hand.

8                     SUNDAY WILLIAMS

9         having been duly sworn, testified as follows:

10             THE CLERK:  And for the record, if you'd

11    please state your full name.

12             MR. WILLIAMS:  My name is Sunday Williams.

13             THE CLERK:  Thank you.  Please be seated.

14             THE COURT:  All right.  Good afternoon.

15             MR. MONTEITH:  Good afternoon, your Honor.

16             MR. WILLIAMS:  Good afternoon.

17             THE COURT:  Mr. Williams, the court will be

18    asking you a number of questions over the next 20 or 25

19    minutes.

20             MR. WILLIAMS:  Yes, sir.

21             THE COURT:  You've just taken an oath, so

22    you have an obligation to answer my questions

23    truthfully.

24              MR. WILLIAMS:  Yes, sir.

25              THE COURT:  If you do not answer my questions

1    truthfully, you could be charged with perjury and with

2    making false statements.

3              It's in your interests to answer my questions

4    truthfully because it's my responsibility to determine

5    if you understand what you're doing this afternoon and

6    the consequences of what you're doing.

7              MR. WILLIAMS:  Yes, sir.

8              THE COURT:  So if you do not understand any of

9    my questions, please let me know.

10             MR. WILLIAMS:  Yes, sir.

11             THE COURT:  And if you want to consult with

12   Mr. Monteith at any time during our discussion, please

13   feel free to do so.

14             MR. WILLIAMS:  Yes, sir.

15             THE COURT:  So that you and he can talk to

16   each other easily, you can both remain seated during our

17   discussion.

18             MR. WILLIAMS:  Yes, sir.

19             THE COURT:  How old are you, Mr. Williams?

20   How old are you, Mr. Williams?

21          You can remain seated.

22          MR. WILLIAMS:  Okay.

23          THE COURT:  How old are you, Mr. Williams?

24          MR. WILLIAMS:  46.

25          THE COURT:  And how much education have you

4

1    had?

2           MR. WILLIAMS:  Up to a Master's degree.

3           THE COURT:  Excuse me?

4           MR. WILLIAMS:  Up to a Master's degree.

5           THE COURT:  Could you pull the microphone up a

6    little bit closer to Mr. Williams.

7           MR. WILLIAMS:  Up to a Master's degree.

8           THE COURT:  You can read and write English

9    reasonably well?

10          MR. WILLIAMS:  I can read.

11          THE COURT:  You and I have to -- if you pull

12   that a little closer to him too.

13          You can read and write English reasonably

14   well?

15          MR. WILLIAMS:  Yes, sir.

16            THE COURT:  What type of work do you do?

17            MR. WILLIAMS:  I work for the City of New

18    York.

19            THE COURT:  And what sort of work do you do

20    for the city?

21            MR. WILLIAMS:  A case manager.

22            THE COURT:  Have you ever been treated by a

23    doctor or a hospital for any form of a mental illness or

24    mental disability?

25            MR. WILLIAMS:  No, sir.

5

1            THE COURT:  Do you have a drug or an alcohol

2    problem?

3            MR. WILLIAMS:  No, sir.

4            THE COURT:  Right now, are you under the

5    influence of any drugs or any alcohol?

6            MR. WILLIAMS:  No, sir.

7            THE COURT:  Are you taking any prescription

8    medication?

9            MR. WILLIAMS:  No, sir.

10            THE COURT:  You are a citizen of what

11    country?

12            MR. WILLIAMS:  Citizen of Nigeria.

13              THE COURT:  Nigeria?

14              MR. WILLIAMS:  Yes, sir.

15              THE COURT:  Have you had enough time to talk

16    with your attorney about this case?

17              MR. WILLIAMS:  Yes, sir.

18              THE COURT:  And have you told him everything

19    that you know about your case?

20              MR. WILLIAMS:  Yes, sir.

21              THE COURT:  Are you satisfied with the

22    representation that he's provided for you up to this

23    point in time?

24              MR. WILLIAMS:  Yes, sir.

25              THE COURT:  Now, the court has before it a

1     document entitled Plea Agreement with your signature on

2     the last page.

3              Did you sign this agreement?

4              MR. WILLIAMS:  Yes, sir.

5              THE COURT:  And did you sign it freely and

6     voluntarily?

7              MR. WILLIAMS:  Yes, sir.

8              THE COURT:  Did you review it with Mr.

9    Monteith before you signed it?

10              MR. WILLIAMS:  Yes, sir.

11              THE COURT:  Mr. Monteith, are you satisfied

12   that your client understands all of the terms and

13   conditions of this agreement?

14              MR. MONTEITH:  I am, your Honor.

15              THE COURT:  Now, under this agreement you

16   intend to plead guilty to count one of the indictment

17   that charges you with making false statements.

18              Do you understand that this is a felony?

19              MR. WILLIAMS:  Yes, sir.

20              THE COURT:  Do you know what the maximum

21   term of imprisonment is under the law for this --

22              MR. WILLIAMS:  Yes, sir.

23              THE COURT:  -- offense?

24              MR. WILLIAMS:  Yes, sir.

25              THE COURT:  Can you tell me what that is?

7

1              MR. WILLIAMS:  Five years.

2              THE COURT:  That's correct; five years.

3              And you could be fined up to $250,000.  Do you

4   understand that?

5              MR. WILLIAMS:  Yes, sir.

6                 THE COURT:  There's going to be a special

7     assessment of a hundred dollars imposed.  Do you

8     understand that?

9                 MR. WILLIAMS:  Yes, sir.

10                THE COURT:  And you could be subject to a term

11    of supervised release of up to three years.  Do you

12    understand that?

13                MR. WILLIAMS:  Yes, sir.

14                THE COURT:  As a result of this conviction, do

15    you understand that you could face the possibility of

16    deportation?

17                MR. WILLIAMS:  Yes, sir.

18                THE COURT:  Now, the sentence that will be

19    imposed in this matter will be governed by the United

20    States Sentencing Guidelines.

21                If your plea is accepted, the probation

22    officer, who is seated to your right in the courtroom,

23    will prepare a presentence investigation report.  That

24    report will contain information about your background

25    and about your participation in this offense.

1                 Once that report is prepared, you and your

2    attorney and the government's attorney will get a copy

3    of the report.  You will have an opportunity to review

4    it and to try to resolve any objections with the

5    officer.  And to the extent that you can't resolve any

6    objections, then they will be resolved at the time of

7    your sentencing hearing.

8           Once that process is completed, the court then

9    determines under the guidelines what the offense level

10   is for your case and what the range of sentence is for

11   your case.

12          You may have certain rights to have any

13   factors affecting the sentence determined by a jury and

14   proven by the government beyond a reasonable doubt.  Do

15   you understand that?

16          MR. WILLIAMS:  Yes, sir.

17          THE COURT:  Now, it's the court's

18   understanding that you wish to give up your right to

19   have the jury make those determinations; is that

20   correct?

21          MR. WILLIAMS:  Yes, sir.

22          THE COURT:  If you give up your right to have

23   the jury make those determinations, then the court

24   will make those determinations at the time of your

25   sentencing using the standard of a preponderance of the

1    evidence, which is a lower standard of proof.  Do you

2    understand that?

3              MR. WILLIAMS:  Yes, sir.

4              THE COURT:  And do you give up this right

5    freely and voluntarily?

6              MR. WILLIAMS:  Yes, sir.

7              THE COURT:  Now, once the court has determined

8    under the guidelines what the range is for your case, in

9    some instances the court can impose a sentence that's

10   greater than the guideline range or less than the

11   guideline range.  If that happens, do you understand

12   you cannot withdraw your guilty plea?

13             MR. WILLIAMS:  Yes, sir.

14             THE COURT:  If you do not receive a sentence

15   that you would like to receive or hope to receive, do

16   you understand that you cannot withdraw your guilty

17   plea?

18             MR. WILLIAMS:  Yes, sir.

19             THE COURT:  Mr. Monteith, have you reviewed

20   the possible applications of the guidelines with your

21   client?

22             MR. MONTEITH:  I have, your Honor.

23             THE COURT:  Now, Mr. Monteith has probably

24   given you an estimate as to where your case falls under

25   the guidelines.  In the end, the court will make the

10

1   final determination.  If it is different from what he

2   has told you, do you understand you cannot withdraw your

3   guilty plea?

4            MR. WILLIAMS:  Yes, sir.

5            THE COURT:  Now, in order for the government

6   to -- one minute.

7            When an individual enters a plea of guilty, he

8   gives up some very important constitutional rights.

9            You have the right to persist in a plea of not

10  guilty and to go to trial before a jury represented by

11  your attorney.

12           At that trial you would have the opportunity

13  to see, to hear, and to question any witnesses that the

14  government called to testify against you.

15           You would have the opportunity to subpoena

16  witnesses on your own behalf and to present to the jury

17  any defenses you have to this charge.

18           If you wanted to, you could take the witness

19  stand on your own behalf, but the government could not

20  require you to take the witness stand, because you have

21  a right against self-incrimination.

22           If you were convicted, you could appeal that

23  conviction.

24          Do you understand that if you enter this plea

25     of guilty, you're going to give up all of those

11

1     important rights?

2               MR. WILLIAMS:  Yes, sir.

3               THE COURT:  And do you give up those rights

4     freely and voluntarily?

5               (No audible response.)

6               THE COURT:  Do you give up those rights freely

7     and voluntarily?

8               MR. WILLIAMS:  Yes, sir.

9               THE COURT:  In order for the government to

10     gain a conviction, there are certain material elements

11     that the government would have to prove beyond a

12     reasonable doubt to the jury's satisfaction.

13              First, that on the date specified in the

14     indictment you made a material statement or

15     representation.

16              A material statement or representation is a

17     statement that has a natural tendency to influence or

18     to be capable of influencing the decision in a matter,

19     whether it be made by an administrator, a bureaucrat, or

20    whatever.  So a material statement is one that's capable

21    of affecting the outcome of a decision, not a minor or

22    insignificant statement.

23         Secondly, the statement must have been false,

24    fictitious, or fraudulent.

25         Thirdly, that that false, fictitious, or

12

1    fraudulent statement or representation was made

2    knowingly and willfully.  In other words, you must have

3    acted voluntarily and deliberately and not mistakenly or

4    inadvertently.  You must have been aware of what you

5    were doing.

6         And lastly, that the statement or

7    representation was made in a matter that was in the

8    jurisdiction of the government of the United States.

9         Now, keeping those elements in mind, I'm going

10    to ask you if you admit to the allegations contained in

11    count one of the superseding indictment, which alleged

12    that in or about May through July 2001, in the District

13    of New Hampshire and elsewhere, Sunday Williams, in the

14    matter within the jurisdiction of the United States

15    Department of State, an agency of the executive branch

16    of the government of the United States, knowingly and

17    willfully falsified a material fact, made materially

18    false, fictitious, and fraudulent statements and

19    representations, and made and used a false writing and

20    document, knowing the same to contain a materially

21    false, fictitious, and fraudulent statement in entry, in

22    connection with an application for a United States

23    Passport, Form DSP-11, in that the defendant, Sunday

24    Williams, executed an application for a United States

25    Passport, which was received at the National Passport

13

1     Center in or about January 21st, 2003.

2           In order to induce and secure the issuance

3     of a United States Passport, Sunday Williams falsely

4     stated on the application that he was a United States

5     citizen, that his name was Salahudeen Muhammed Green,

6     and that he was born on August 21st, 1972, in Brooklyn,

7     New York, and that his Social Security number was

8     XXX-XX-8063.

9           In support of his application, Mr. Williams

10    submitted a birth certificate which purported that he

11    was born in Brooklyn, New York, on August 21st, 1972,

12    and that his name was Salahudeen Muhammed Green.

13          Sunday Williams knew that these statements and

14   representations were false, and that at all relevant

15   times Sunday Williams was neither a citizen nor a

16   national of the United States and was ineligible to

17   receive a United States Passport, in violation of the

18   laws of the United States.

19          Do you admit to those factual allegations?

20          MR. WILLIAMS:  Yes, sir.

21          THE COURT:  I'm now going to ask the

22   prosecutor to state what facts that the government

23   would intend to prove if this case went to trial.

24          Listen carefully, and if you have any

25   objections to what he says, you can tell me what those

                                                    14

1   are when he finishes.

2          MR. RUBEGA:  Thank you, your Honor.

3          Were the case to go to trial, the United

4   States would prove every element of the charge beyond a

5   reasonable doubt.

6          Testimony by Passport Specialist Calvin Wells,

7   as well as certified records of the U.S. State

8   Department's National Passport Center in Portsmouth,

9   New Hampshire, would prove that on or about May 16,

10    2001, an application for a U.S. Passport, or DSP-11,

11    was submitted under the identity of Salahudeen

12    Muhammed Green, along with what purported to be the

13    applicant's birth certificate from the City of New York.

14    The applicant submitted the birth certificate to bolster

15    a claim made in the application of U.S. citizenship and

16    a claim that the defendant was born on 8/21/72 in

17    Brooklyn, New York.

18          Passport Specialist Wells' testimony and the

19    certified records of the U.S. State Department would

20    prove that this application was forwarded for processing

21    and adjudication to the National Passport Center in

22    Portsmouth, New Hampshire, where it was received on

23    or about July 1, 2001.

24          Passport Specialist Calvin Wells would

25    testify that he referred the application to the

15

1    National Passport Center's Fraud Coordination Office

2    due to suspected fraud, and that the application

3    was then referred to the U.S. State Department's

4    Diplomatic Security Service for location of the

5    subject who submitted the application and further

6      investigation.

7              U.S. State Department's Diplomatic Security

8      Service Special Agents James Eisenhut and Marcos

9      Cabrera would testify that they, on January 23, 2003,

10     interviewed the applicant, Mr. Williams, and that Mr.

11     Williams signed a written and sworn statement admitting

12     that his true name was Sunday Williams, that he was

13     born in Lagos, Nigeria, his true date of birth was

14     9/26/57, and that he hoped to obtain the passport to

15     visit his father in Nigeria, as his father was

16     seriously ill.

17             Mr. Williams admitted that he obtained the

18     documents he used to impersonate Mr. Green from the

19     real Mr. Green himself, who assisted Mr. Williams in

20     making the fraudulent application, for which Mr.

21     Green -- pardon me; for which Mr. Williams paid Mr.

22     Green $500.

23             The special agents would further testify that

24     they took Mr. Williams' fingerprints, which they then

25     forwarded to the Department of Homeland Security, Bureau

16

1      of Immigration and Customs Enforcement.

2              The testimony of special agents and certified

3    records both of the Department of Homeland Security,

4    Bureau of Immigration and Customs Enforcement, would

5    prove that Mr. Williams' admissions as to his identity,

6    true date and place of birth, foreign citizenship and

7    illegal status in the U.S. were corroborated, and that

8    Mr. Williams had been admitted to the U.S. as a

9    temporary worker on 05/02/92, was authorized to remain

10   until 06/05/92, and had been in removal proceedings

11   previously, had applied for political asylum, and was

12   issued employment authorization, which had expired.

13          Thank you, your Honor.

14          THE COURT:  Any exceptions to those facts, Mr.

15   Monteith?

16          MR. MONTEITH:  No, your Honor.

17          THE COURT:  Mr. Williams, do you accept the

18   facts as stated by the prosecutor?

19          MR. WILLIAMS:  Yes, sir.

20          THE COURT:  Has anybody said anything to you

21   or done anything to you in any way to force you or to

22   threaten you into entering this guilty plea?

23          MR. WILLIAMS:  No, sir.

24          THE COURT:  Do you have any questions about

25   anything that I have said to you or asked you up to this

1    point in time?

2              MR. WILLIAMS:  Ultimately, I only want to say

3    that I don't have any objection to it.

4              THE COURT:  I'm sorry; I didn't quite

5    understand.

6              MR. WILLIAMS:  Yes, I do not have any

7    objection to it.  But I just want to say that the

8    Immigration matter is pending.  It's not like it's a

9    spy.

10              MR. MONTEITH:  If the -- if I can clear

11    that up, your Honor.  The matter with Immigration

12    and Naturalization is ongoing and has not been

13    resolved.  He has had court hearings in New York and

14    has received additional time in order to resolve the

15    matter.

16              MR. WILLIAMS:  Yes.

17              THE COURT:  All right.  The court finds that

18    the defendant is fully competent and capable of entering

19    an informed plea.  He is aware of the charge against

20    him.  He's aware of the rights that he's giving up.

21    He's aware of the consequences that can follow.  His

22    plea is knowing.  It is voluntary.  It is supported by

23    an independent basis in fact with respect to the

24    material elements of this offense.  Therefore, the court

25    will accept his plea at this time.

18

1              Do you waive the reading of the count, Mr.

2    Monteith?

3              MR. MONTEITH:  We do, your Honor.

4              THE CLERK:  Mr. Williams, if you'd please

5    stand.

6              To the superseding indictment filed on August

7    5th, 2004, count one charges you with false statements,

8    in violation of Title 18, United States Code, Section

9    1001.

10             How do you plead as to count one?

11             MR. WILLIAMS:  Guilty.

12             THE COURT:  The defendant is judged guilty of

13   that offense, and sentencing is scheduled for January

14   14th, 2005, at 9:30 a.m.

15             What is the situation with respect to

16   bail?

17             MR. RUBEGA:  The defendant's on personal

18   recognizance, your Honor, and the United States sees

19   nothing wrong with continuing that.  He's been

20   cooperative and responsive.

21             THE COURT:  All right.  And the current bail

22   conditions will remain in effect.

23             You have an obligation to comply with those

24    conditions, Mr. Williams.  If you fail to do so, you

25    could be detained pending your sentencing.

19

1            And you have an obligation to appear for your

2    sentencing.  If you fail to appear, you could be charged

3    with another crime that also carries a prison sentence

4    with it.  Do you understand that?

5            MR. WILLIAMS:  Yes, sir.

6            THE COURT:  The court will be in recess.

7            MR. MONTEITH:  Thank you, your Honor.

8            (Court adjourned at 2:25 p.m.)

9

10            C E R T I F I C A T E

11

12

13            I, Celeste A. Quimby, do hereby certify that

14    the foregoing transcript is a true and accurate

15    transcription of the within proceedings, to the best of

16    my knowledge, skill, ability and belief.

17

18

19                         ___
                    CELESTE A. QUIMBY, NH LCR No. 17

20

21

22

23

24

25